## SEGREGATION OF LEPERS.

Opinion of the Justices of the Supreme Court to the Legislative Assembly of 1884, Upon the Law to Prevent the Spread of Leprosy.

MAY, 1884.

JUDD, C. J.; McCULLY and AUSTIN, JJ.

The law authorizing the segregation of lepers is Constitutional.

*To the Honorable President of the Legislative Assembly:*

SIR: The Justices of the Supreme Court have received from the Legislative Assembly a resolution upon which their opinion was requested, and now transmit, through you, their answer to the same. The resolution is as follows:

"WHEREAS, There is a large number of men, women and children confined at Kalawao and Kakaako for having the leprosy, and as the fact of a person having said disease is not a crime, under the laws or Constitution; therefore, be it

*Resolved,* That this Honorable Legislative Assembly request the Judges of the Supreme Court to state their legal opinion on the following questions:

First: Is it a crime to be afflicted with leprosy, that these people are confined at Kalawao and Kakaako?

Second: Is not such confinement contrary to the Constitution?

Third: Is not the existing law relating to leprosy contrary to the Constitution?"

The first question submitted is, whether leprosy, the cause for which these people are detained at Molokai, is a crime? The preamble to the resolution concedes that leprosy is not a crime, and certainly it is not. It is a disease. There may be instances where a person having the disease of leprosy willfully contaminates others, or transmits it to his offspring, or, being free from it, recklessly exposes himself to infection, and these may be called wrong or criminal acts; but unless these acts are prohibited by law, they are not offenses, or punishable as such by law.

The second and third questions may be taken and answered together; for if the law authorizing the restraint of the lepers be in violation of the Constitution, then the restraint is itself illegal.

The fact that since the enactment of the law segregating the lepers, some nineteen years ago, its constitutionality has not been tested by an application for a writ of habeas corpus, or otherwise, may be taken as a general acquiescence by the community in the wisdom of the law. If such a course had been taken, the Supreme Court would then have had the advantage of argument from learned counsel on both sides of the question, and the decision then made would have been much more satisfactory.

It is presumed by us that the provisions of the Constitution which the mover of the resolution conceives to be violated by the Leprosy Act, are Articles 6, 9, 11, 12 and 14. They read as follows:

"Article 6. No person shall be subject to punishment for any offense, except on due and legal conviction thereof, in a Court having jurisdiction of the case.

"Article 9. No person shall be compelled, in any criminal case, to be a witness against himself; nor be deprived of life, liberty or property without due process of law.

"Article 11. Involuntary servitude, except for crime, is for-

ever prohibited in this Kingdom. Whenever a slave shall enter Hawaiian territory he shall be free.

"Article 12. Every person has the right to be secure from all unreasonable searches and seizures of his person, his house, his papers and effects, and no warrants shall issue but on probable cause, supported by oath or affirmation, and describing the place to be searched, and the persons or things to be seized.

"Article 14. Each member of society has a right to be protected by it in the enjoyment of his life, liberty or property, according to law."

The preamble of the Act to prevent the spread of leprosy is as follows:

"WHEREAS, The disease of leprosy has spread to a considerable extent among the people, and the spread thereof has excited well-grounded alarms; *and whereas further*, some doubts have been expressed regarding the powers of the Board of Health in the premises, notwithstanding the 302d Section of the Civil Code; *and, whereas*, in the opinion of this Assembly, the 302d Section is properly applicable to the treatment of persons afflicted with the leprosy; yet, for the greater certainty and for the more sure protection of the people, be it enacted," etc.

The Section 302d of the Civil Code referred to is as follows:

"When any person shall be infected with the smallpox, or other sickness dangerous to the public health, the Board of Health, or its agent, may, for the safety of the inhabitants, remove such sick or infected person to a separate house, and provide for him with nurses and other necessaries, which shall be at the charge of the person himself, his parents or master, if able; otherwise, at the charge of the Government."

In a case decided in 1872 by the Supreme Court of the United States (reported in 16 Wallace, 36), Judge Field says of the law the Court was then considering, which concerned the slaughter houses of New Orleans, that its enactment was considered as the legitimate exercise of what is termed the *Police power of the State:* "That power undoubtedly extends to all regulations affecting the health, good order, morals, peace and safety, and is exercised on a great variety of subjects and in almost numberless ways. All sorts of restrictions and burdens are imposed under

it; and when these are not in conflict with any constitutional provisions or fundamental principles, they cannot be successfully assailed in a judicial tribunal." In the same case, Judge Miller says: "This power is, and must be from its very nature, incapable of any very exact definition or limitation. Upon it depends the social order, *the life and health of the citizens*, the comfort of an existence in a thickly populated community, the enjoyment of private and social life and the beneficial use of property."

The Supreme Court of Vermont, in 27 Vermont Reports 149, says: "The police power of the State extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the State, and persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health and prosperity of the State. Of the perfect right of the Legislature to do this, no question ever was, or, upon acknowledged general principles, ever can be made, so far as natural persons are concerned."

In 2 Kent's Commentaries, 340, the author says: "Unwholesome trades, slaughter houses, operations offensive to the senses, the deposit of powder, the application of steam power to propel cars, the building with combustible materials and the burial of the dead, may all be interdicted by law, in the midst of dense masses and population, on the general and rational principle that every person ought to so use his private property as not to injure his neighbors, and that private interests must be made subservient to the general interests of the community."

Judge Shaw, in a case reported in 7 Cushing 85, says: "The police power is a power vested in the Legislature by the Constitution to make, ordain and establish all manner of wholesome and reasonable laws, statutes and ordinances, either with penalties or without, not repugnant to the Constitution, as they shall judge for the good and welfare of the commonwealth, and of the subjects of the same."

The like authority is conferred on the Legislature by the Hawaiian Constitution, in Article 48. "The Legislature has full authority from time to time to make all manner of wholesome laws not repugnant to the provisions of the Constitution."

It has been truly said that self-preservation is the first law of nature. This is equally true of a State. " *Salus populi suprema est lex.*" The State has the authority inherent in itself to enact laws to secure the health, welfare and safety of the individual, and we have seen above that this authority is expressly conferred by the Constitution.

In Dwarris on Statutes, the police power of the State is called " the law of *overruling necessity..*" No State could exist without it. If it did not exist in this Kingdom, our population would be liable to be swept away by any and every contagious disease that might come to our shores, and no measures of quarantine or restriction could be taken against it.

The Legislature, by the Act of 1865, in the exercise of its constitutional authority to make wholesome laws, were of the opinion that, in order to secure the health and welfare of the community, all leprous persons, who shall be deemed by competent authority to be capable of spreading the disease, should be isolated and secluded.

It will be seen from a perusal of the whole Act concerning leprosy that the Legislature regarded this disease as contagious, or capable of being communicated to other human beings. From the best information the Court can obtain, this is a characteristic of this disease. Upon this view of the disease, laws segregating lepers have been enacted in nearly all countries of the world.

The Legislature of Hawaii acted upon this police power of the State when it enacted all the health laws of this Kingdom, and these have existed since the foundation of the Government.

The Supreme Court, in the Chinese Laundry Case, 4 Hawn. Rep. 335, decided that an Act forbidding the carrying on of the business of laundry keeping, or washing for hire, within certain limits in Honolulu, was an exercise of the police power of the State with regard to the comfort, safety and welfare of society, and was constitutional.

As at present advised, we are of the opinion that the law authorizing the segregating and isolating of lepers is not only a wholesome law and constitutional, but that without such a law the result would eventually be that much of our useful population would leave these islands, ships would cease to touch here, our

products would fail to find a market abroad, and these fair islands would become a pest-house to be avoided by the whole civilized world.

A. FRANCIS JUDD,<br>
LAWRENCE MCCULLY,<br>
BENJ. H. AUSTIN.